UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MARCELLA BROWN, Individually, and as
Administratrix of the Estate of KEVIN
C. BROWN, Deceased,

                                Plaintiff,


        -against-                                                **MEMORANDUM AND ORDER**
                                                                16-CV-54 (LDW)(AYS)

COUNTY OF NASSAU, NASSAU COUNTY
CORRECTIONAL CENTER, NASSAU
COUNTY SHERRIF 'S DEPARTMENT,
MICHAEL J. SPOSATO, Individually, and
as Sheriff of Nassau County, ARMOR
CORRECTIONAL HEALTH SERVICES,
INC., ARMOR CORRECTIONAL HEALTH
SERVICES OF NEW YORK, INC.,
NASSAU COUNTY CORRECTIONS
OFFICERS, "JOHN DOES 1-10," in their
Individual and Official Capacities,
ARMOR CORRECTIONAL HEALTH SERVICES,
INC. EMPLOYEES and AGENTS, "JOHN
And JANE DOES 11-20," in their Individual
and Official Capacities,


                                Defendants.
---------------------------------------------------------X
**SHIELDS, United States Magistrate Judge:**

        Plaintiff Marcella Brown ("Plaintiff") commenced this action on January 6, 2016,

alleging violations of federal and state law arising out of the death of Plaintiff's son, Kevin

Brown ("Brown"). Brown died while incarcerated at Nassau County Correctional Center

("NCCC" or the "Facility").  Named as Defendants are the County of Nassau (the "County"),

and the County Sheriff, as well as unnamed "John Doe" County Corrections Officers (the "CO

Defendants") (collectively the "County Defendants"). At the time of Brown's death, the County

contracted with Defendant Armor Correctional Health Services ("Armor") to provide health and medical care at the Facility.

Plaintiff's original complaint alleged federal causes of action pursuant to 42 U.S.C § 1983, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12121. Plaintiff's state law claims include a claim of wrongful death pursuant to the New York Estate Powers and Trust Law §§ 5-4.1 and 5-4.3, as well as claims for loss of consortium, malpractice, failure to supervise, failure to train and negligence. Plaintiff further alleges reckless and/or deliberately indifferent conduct in violation of the United States and New York State Constitutions, as well as a claim of a false and misleading misrepresentation and fraud.  The final enumerated claim appears to arise out of a claim that Defendants failed to inform Plaintiff of her son's death. See Complaint, Docket Entry ("DE") 1. On March 9, 2016, Plaintiff amended the Complaint for the purpose of alleging the fact that on February 23, 2016, she was issued Letters of Administration from the Queens County Surrogates Court. See First Amended Complaint DE 5 at ¶ 28.

On June 22, 2016, Plaintiff filed a motion to amend, seeking to serve a Second Amended Complaint. DE 19. The motion to amend does not seek to add new causes of action or parties. Instead, Plaintiff seeks to add factual allegations to provide additional details in support of claims already alleged. See Proposed Second Amended Complaint (the "PSAC"), DE 19-2. The Honorable Leonard D. Wexler has referred the motion to this Court. For the reasons discussed below, Plaintiff's motion to amend is granted.

BACKGROUND

I.      Procedural History

As noted, this case was commenced in January of 2016. DE 1. The presently operative complaint, i.e., the First Amended Complaint (the "FAC") was filed on March 9, 2016. DE 5. Shortly thereafter, on March 21, 2016, Defendants requested a pre-motion conference before the District Court. DE 9. The letter requesting the conference sought leave to move to dismiss and/or strike allegations in the FAC. See id. On March 23, 2016, this Court scheduled an initial conference to be held on April 28, 2016. DE 10.  Judge Wexler directed that counsel appear before him for the requested pre-motion conference, prior to appearing before this Court for the previously scheduled initial conference. See Order dated April 22, 2016.

On April 28, 2016, two conferences were held. The first conference was before the District Court and the second before this Court. At the conference before the District Court, Judge Wexler set a briefing schedule for Defendants' proposed dispositive motions. DE 16. That schedule provided for full briefing of motions to dismiss by June 17, 2016.  Id. Following the pre-motion conference before the District Court, counsel appeared before this Court for an initial conference. This Court "so ordered" a discovery schedule, and in addition, set forth specific dates for the production of specified documents. See DE 15.  The scheduling order entered by this Court set June 30, 2016 as the deadline to amend the pleadings, and October 31, 2016 for the completion of fact discovery. Id.

On May 7, 2016, Plaintiff timely requested a pre-motion conference before the District Court for leave to file a motion to amend. DE 17. In an order dated May 12, 2016, Judge Wexler directed Plaintiff to provide Defendants with a copy of the proposed second amended complaint and gave Defendants until May 25, 2016 to decide whether they would agree to service thereof. In the event that no agreement was reached, Judge Wexler set a briefing schedule for Plaintiff's motion to amend, which provided for full briefing of that motion by June 22, 2016.

The parties did not reach agreement as to the proposed amendment.  Accordingly, on June 22, 2016, Plaintiff filed the present motion to amend. DE 19. In an order dated July 14, 2016, the motion to amend was referred to this Court. While there is presently no stay of discovery, the District Court has stayed briefing of Defendants' motions to dismiss pending a decision on the present motion to amend. See Order dated May 12, 2016.

II.     Facts

Unless stated otherwise, the facts set forth below are drawn from the FAC.

A.     Brown's Arrest, Incarceration and Death

Brown, Plaintiff's son and decedent, was arrested on January 13, 2014. Brown's arrest was allegedly due to an outstanding warrant for a minor crime. FAC ¶ 81, DE 5. As a result of his arrest, Brown was incarcerated at the NCCC. On February 10, 2014, Brown, at the age of 47, was found dead in his cell.[1] Id.

Brown's health was impaired prior to his admission to NCCC. According to Plaintiff, at the time of his arrest, Brown was on medication to control a seizure disorder from which he has suffered for approximately twenty years. FAC ¶ 82, DE 5. Although Brown exhibited agitated behavior and experienced active hallucinations upon his admission to NCCC, he was not given a full mental health assessment. Id. ¶ 85.  Additionally, despite the fact that Brown had an earlier seizure while incarcerated at the Facility, he was not considered for transfer to a hospital. Id.

Plaintiff claims that Defendants acted in concert and in a fraudulent manner to prevent Plaintiff from learning of their conduct, omissions and action, as well as the identity of outsourced third-party medical care providers. Id. ¶ 21. Plaintiff was never told of the

---

[1] The Court notes that the Complaint incorrectly states Brown was found dead on February 10, 2013; however, the Plaintiff's papers state the correct date of February 10, 2014. See DE 19-3, page 1.

investigation to determine the cause of Brown's death. Instead, she first learned that something untoward occurred when she received a call from an investigative reporter in or around November 2015. Id. ¶ 22. According to Plaintiff, her son's death was a direct result of the inadequate medical treatment that her son received while incarcerated at NCCC. Id. ¶ 20.

B.      The NYSCOC Investigation of Brown's Death

The New York State Commission of Correction ("NYSCOC") is an executive branch agency authorized to prescribe rules and regulations governing correctional facilities. Id. ¶¶ 56-57. While the NYSCOC is authorized to prescribe such rules and regulations, it lacks enforcement authority. Id. ¶ 57. The NYSCOC investigated Brown's death, and concluded that he died of heart failure due to hypertensive cardiovascular disease. Id. ¶ 83. It further determined that Brown's body was in full rigor mortis when found, indicating that Brown had been neglected and not checked by jail personnel for an extended and unreasonable period of time. Id. As to Brown's medical care while incarcerated at NCCC, the NYSCOC found that his care, which was provided by Armor, was deficient and resulted in a mismanaged mental health diagnosis, inadequate psychiatric care, undiagnosed heart problems, and inadequate management of a seizure disorder. Id. ¶ 84. Such problems were compounded by a health record that was unorganized, incomplete, and illegible. Id. ¶ 86. The NYSCOC concluded that Brown's death may have been prevented had he received proper medical care and supervision. Id. ¶ 87.

C.      Prior Investigations as to the Care of Inmates at the NCCC

This is not the first time that NCCC has been under investigation for providing inadequate medical treatment to its inmates. In or about 1981, the then Nassau County Sheriff and the County entered into a consent judgment with inmate plaintiffs who had filed suit complaining of unconstitutional conditions at NCCC, including insufficient medical care. Id. ¶

5

50. After the County and other defendants refused to comply with the judgment, plaintiffs filed multiple lawsuits. Id. ¶ 51. In or about 1999, the United States Department of Justice ("DOJ") conducted an investigation into the conditions at the NCCC. Based on its investigation, the DOJ concluded that the conditions at the NCCC rose to the level of constitutional violations due to the deliberate indifference to inmates' serious medical needs. Id. ¶ 52. In or about 2002, the United States Attorney for the Eastern District of New York and the United States Attorney General's Office filed a lawsuit against the NCCC, the County and the Nassau County Sheriff's Department ("NCSD"). Id. ¶ 54. A consent decree was thereafter executed (the "Settlement") that directed the County and the NCCC to make significant changes to its medical and mental health care procedures. Id. ¶ 54. The terms of the Settlement required NCCC to develop and/or implement appropriate medical policies, procedures, and protocols in conformance with standards of both the New York State Commission on Correction Health Care ("NYSCCHC") and the American Psychiatric Association Standards for Psychiatric Services in jails and prisons. Id. ¶ 55.

The DOJ monitored NCCC until 2008. Id. ¶ 54. In or about 2009, NYSCOC issued a report indicating that the NCCC was not in compliance with the minimum standards for a correctional facility. Id. ¶ 56.  In 2012, the New York Civil Liberties Union brought an action on behalf of NCCC inmates who suffered health and medical mistreatment and malpractice while incarcerated. Id. ¶ 59.  The action sought to compel the County to appoint seven members to the Board of Visitors, a board with wide ranging powers to oversee NCCC. The Board of Visitors was established in or about 1990, when the County attempted to address human rights issues at NCCC by amending the County Charter. Id. ¶ 58.  Although the County Charter's provision mandating a Board of Visitors is a non-discretionary duty, the County failed to comply with its

requirement to appoint seven board members. Id. ¶ 59.  In March of 2013, a New York State Supreme Court Justice ordered the appointment of board members to the Board of Visitors. Board members were eventually appointed and confirmed. Id. ¶ 59.  However, as of the date the PSAC was filed, the Board of Visitors had yet to convene to address the health and medical needs of inmates in NCCC. PSAC ¶ 60, DE 19-2.

D.     Allegations as to Armor

As noted, the County contracts with Armor to provide medical care to its inmates. FAC. ¶ 75, DE 5. Brown is not the first NCCC inmate to die while under Armor's medical care. Indeed, prior to Brown's death, NYSCOC had investigated other inmate deaths, and, on more than one occasion, concluded that Armor was grossly incompetent. Id. ¶¶ 61, 65, 70, 73.  Despite the County's knowledge of Armor's inadequate medical services, it continues to contract with the company. Id. ¶ 75.

Among Plaintiff's causes of action is the claim that Defendants exhibited deliberate indifference to Brown's serious medical needs by, inter alia, allowing systematic deficiencies at NCCC to fester for decades and ignoring the reports of the NYSCOC and the conduct of Armor. PSAC ¶ 157, DE 19-2; FAC ¶ 93, DE 5.

## DISCUSSION

I.     Legal Standard on Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings prior to trial.  Fed. R. Civ. P. 15. Where, as here, leave of court is required to amend, the court has broad discretion to grant such leave "freely," "when justice so requires." Fed. R. Civ. P. 15(a)(2). Because amendments "tend to facilitate a determination on the merits," they are "generally favored."  Zucker v. Porteck Global Servs., Inc., 2015 WL 6442414, at *4 (E.D.N.Y.

2015) (citations omitted). As stated by the Supreme Court, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Thus, Rule 15 is construed liberally and courts have broad discretion to allow parties to add additional causes of action. See Shpak v. Curtis, 2012 WL 511478, at *4 (E.D.N.Y. 2012); see also Hartman v. County of Nassau, 2008 WL 1923127, *18 (E.D.N.Y. 2008).

Despite the liberal construction generally afforded Rule 15, motions to amend are properly denied where they are founded in "undue delay, bad faith, futility, or prejudice to the non-moving party...." Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (citation omitted). The non-movant bears the burden of demonstrating that the proposed amendment is improper. Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998). An amendment is properly denied as futile if the proposed new claim "has no merit or fails to demonstrate a cognizable or sufficient claim." Zucker, 2015 WL 6442414, at *4 (citing Lamothe v. Town of Oyster Bay, 2011 WL 4974804, at *9 (E.D.N.Y. 2011)). When determining futility, the court reviews the viability of the proposed claim pursuant to the same standard invoked with respect to a Rule 12 motion to dismiss. Lucente v. Internat'l Bus. Machs., Corp., 310 F.3d 243, 258 (2d Cir. 2002); Morritt v. Stryker Corp., 973 F. Supp. 2d 177, 183 (E.D.N.Y. 2013); Catholic Diocese of Rockville Centre v. Inc. Vill. of Old Westbury, 2012 WL 1392365, at *5 (E.D.N.Y. 2012). Under this familiar standard, the claim sought to be asserted must plead facts sufficient to support a plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As in the Rule 12 context, the Court considering futility construes the facts alleged by the party seeking to amend as true, and views such facts in a light "most favorable" to the moving party. Aetna Cas. & Sur. Co. v.

8

Aniero Concrete Co., 404 F.3d 566, 604 (2d Cir. 2005); see Hartman v. County of Nassau, 2008 WL 1923127, at *18 (E.D.N.Y. 2008) (citation omitted).

In addition to seeking dismissal for lack of plausibility, a Rule 12 motion can also be asserted to strike specific factual allegations. Specifically, Rule 12(f) allows a court "on its own," or upon motion, to strike material that is "redundant, immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). Absence of showing of irrelevant or complete lack of support, allegations that "a complaint may be characterized as "overly narrative," or containing "generalized statements or matters of opinion" are insufficient to support a Rule 12(f) motion to strike. Lynch v. Southampton Animal Shelter Found. Inc., 278 F.R.D. 55, 65 (E.D.N.Y. 2011) (citing Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 829 (S.D.N.Y. 2008)).

II.     The Proposed Second Amended Complaint

As noted, the PSAC does not seek to add new claims. Instead, it seeks only to add new factual allegations which, according to Plaintiff, strengthen and amplify the claims already alleged. The FAC and the PSAC share a common theme and allege certain identical facts. The factual allegations proposed to be added by way of the PSAC differ in that they particular factual allegations as to the deaths and inadequate care of inmates, other than Plaintiff, that occurred while they were incarcerated at NCCC and/or under the care of Armor. Such allegations are offered in further and more particularized support of Plaintiff's claim of deliberate indifference to Brown's serious medical needs.

As to common allegations, both the FAC and the PSAC state that since 2010, there have been at least nine inmate deaths that could have been prevented. FAC ¶ 61; PSAC ¶ 61. Both pleadings describe the circumstances surrounding six of the deaths that occurred in NCCC between January 3, 2010 and June 11, 2011. FAC ¶¶ 62-79; PSAC ¶¶ 62-79, DE 19-2. The

PSAC differs from the FAC by: (1) alleging specific factual allegations that describe the circumstances surrounding deaths and/or injuries of inmates incarcerated in facilities located in other jurisdictions where Armor provided medical services; (2) alleging facts that describe Nassau County's knowledge of the inadequate services provided by Armor; (3) stating the County Defendants' repeated ratification of Armor's policies, practices, and protocols, when they should have instead taken action to terminate Armor's contract, and (4) asserting factual allegations describing the circumstances surrounding a death of an NCCC inmate prior to Plaintiff's death, as well as a an inmate death after Plaintiff's death.

With respect to other deaths allegedly attributable to Armor's inadequate care, Plaintiff proposes to add factual allegations describing the circumstances surrounding lawsuits filed in this, and other jurisdictions regarding deaths and/or injuries of inmates who were incarcerated in facilities that contracted with Armor to provide medical services. Such jurisdictions include jails located in Niagara County New York, Hillsborough and Broward Counties in Florida, Tulsa, Oklahoma, and Virginia. Plaintiff also seeks to add more particularized allegations as to a death occurring in this District, in the NCCC. The allegations sought to be added with respect to each jurisdiction follow.

a.   Niagara County Jail

Plaintiff alleges that Tommy Lee Jones ("Jones") and Daniel Pantera ("Pantera") both died while they were incarcerated at Niagara County Jail. Plaintiff describes the factual allegation surrounding both deaths. With regard to Jones, who died on December 29, 2012, Plaintiff asserts that NYSCOC found Armor to be negligent, recommended an investigation as to why the patient was not given immediate care, and found that the medical director prescribed improper care. As to the death of Pantera, who was arrested for stealing a cup of coffee and died

in custody on December 25, 2012, Plaintiff asserts that NYSCOC found that Armor's treatment of Pantera constituted gross negligence, and that his death was preventable. PSAC ¶¶ 83-85, DE 19-2.

    b.  <u>Hillsborough County Jail in Florida</u>

Plaintiff alleges that Allen Hicks ("Hicks"), a high school baseball coach, died at age 51 while incarcerated at Hillsborough County Jail. According to the PSAC, Hicks was arrested for driving his car erratically. After he was taken to the correctional facility, it became apparent that Hicks was speaking incoherently and that the left side of his body was not functioning. Instead of providing Hicks with a medical screening, Armor's nurses are alleged to have stood by as Hicks was taken to his cell and placed face down on a mattress. Within 36 hours, Hicks was found comatose, soaked in his own urine and the victim of a massive brain hemorrhage. He died one month later. The Hillsborough County Sheriff's Office took responsibility for mistakes made by both the Sheriff's Office and Armor. Plaintiff further alleges that Hicks' family received a settlement of $800,000.00 from Armor, $200,000.00 from the Sheriff's Office, and that Hillsborough County Jail terminated its relationship with Armor. PSAC ¶¶ 86-90, DE 19-2.

    c.  <u>Broward County Jail in Florida</u>

Plaintiff alleges that Raleigh Priester ("Priester") died at the age of 52 while incarcerated in Broward County Jail. According to Plaintiff, despite the fact that Preister suffered from schizophrenia and showed outward signs of mental disturbance, he was never moved to a facility for treatment, and received inadequate nutrition. Priester died on July 10, 2012.  Plaintiff's proposed second amended complaint further asserts that Preister's family and the Broward County Sheriff's Office recently reached a confidential settlement, and alleges that the settlement occurred in close proximity to a ruling made by the Southern District of Florida, which required

Armor to turn over documents. Plaintiff specifically alleges that, "based upon information and belief, Armor chose to settle rather than disclose." PSAC ¶¶ 91-93, DE 19-2.

      d.  <u>Tulsa Correctional Facilities</u>

Plaintiff alleges that inmates of the Tulsa County Jail sued Armor and the Tulsa County Sheriff's Office for claims of inadequate medical care. According to the PSAC, the negligent treatment of Armor resulted in eye damage to an inmate. PSAC ¶ 94, DE 19-2.

      e.  <u>Fluvanna Correctional Center in Virginia</u>

Plaintiff sets forth proposed factual allegations claiming that in July of 2012, women prisoners in Fluvanna Correctional Center in Virginia brought a class action lawsuit against Armor and the Virginia Department of Corrections ("VDOC"). The lawsuit consisted of 1,200 women inmates and claimed that the women prisoners were subject to a "systematic, pervasive, and ongoing" failure of constitutionally adequate health care that violated the Eighth Amendment. Plaintiff's proposed second amended complaint lists various allegations set forth in the Fluvanna lawsuit. These allegations include a statement that the problem with the Fluvanna medical care "lies with the VDOC's outsourcing to Armor," and that "the suffering stems directly from the policies, customs and practices of Armor that puts profits over people."  PSAC ¶ 96, DE 19-2. The proposed factual allegations specifically describe the circumstances surrounding three women Fluvanna inmates, Darlene White ("White"), Jeanna Wright ("Wright"), and an unnamed third prisoner, who were misdiagnosed and inadequately treated by Armor, two of which resulted in death. PSAC ¶¶ 96-100, DE 19-2. White's symptoms consisted of severe headache, nausea, diarrhea, and radically elevated blood sugar levels; she was told to lie on a bed, where she vomited and defecated on herself without receiving medical care, and died shortly thereafter. <u>Id.</u> ¶ 97.  Wright complained of severe abdominal pain and rectal

bleeding; after a year of being told she was fine, she was taken to the University of Virginia Medical Center, where she was diagnosed with Stage IV abdominal cancer, and died a few weeks later. Id. ¶ 98. The third Fluvanna inmate, as described by Plaintiff, was told by Armor that she had early stages of menopause, when in reality she had sarcoidosis, which is a collection of nodules within the chest that could cause respiratory failure and death. Id. ¶ 98.

Plaintiff's proposed second amended complaint further alleges that the Fluvanna suit demonstrates that Defendant Armor has a history of acting with deliberate indifference to the prisoners' serious medical problems and needs. Id. ¶ 102. Plaintiff points out that prior to the Fluvanna case being settled in November of 2014, the court found that the inmates' complaints were "serious medical conditions," and that the defendants showed "deliberate indifference." Id. ¶¶ 102-03.

> f.   Additional Allegations as to the NCCC

The PSAC adds factual allegations describing the vulnerability of NCCC inmates, id. ¶¶ 104-06, as well as allegations that Nassau County acted with deliberate indifference by contracting with Armor, despite its knowledge of the inadequate services provided by the company; ratifying the policies, practices, and protocols of Armor; and continuing to provide inmates with deficient medical care.  Id. ¶¶ 107-43. With regard to the vulnerability of NCCC inmates, Plaintiff specifically claims that serving sentences for minor crimes becomes a "death sentence." Id. ¶ 104.

With regard to Defendants' deliberate indifference allegations, the PSAC refers specifically to the allegations in a lawsuit brought in this District regarding the death of NCCC inmate, John Gleeson ("Gleeson"). See Gleeson Complaint, DE 20-4. Gleeson allegedly visited the NCCC infirmary after an angioedema attack, a type of attack with which he was familiar, and

knew required emergency room care. According to the PSAC, Gleeson was not brought to an emergency room, and he later died.  Plaintiff alleges that prior to Gleeson's death, the County and Armor were warned of their deficiencies by the NYSCOC. Indeed, Plaintiff alleges that the County and the Correction Officer Defendants had actual knowledge of the deficiencies in the provision of health and medical care at NCCC, and were aware of the substantial risk of serious injury or harm to Gleeson.

Gleeson's death is alleged to have provided Defendants with specific knowledge of the deficiencies that could, and did, lead to Brown's death. As set forth in the PSAC, Defendants "exhibited deliberate indifference by . . .  allowing the systematic deficiencies of health and medical care at the NCCC to 'fester' for decades, . . . by hiring Armor without doing proper due diligence and, further, by renewing Armor's contract under and in light of all of the circumstances extant." Id. ¶ 129. Plaintiff further alleges that Defendants acted with deliberate indifference prior to Brown's death, id. ¶ 130-39, and that they continue to ratify the policies, practices and protocols of Armor, even after his death.

Plaintiff additionally asserts that Armor continues to provide deficient medical care to inmates, by highlighting the death of Antonio Marinaccio, Jr., an inmate with a pre-existing heart condition who became brain dead in May of 2015, after Armor sent him back to his cell instead of performing an EKG when he complained of chest pains. Id. ¶ 141-43.

III.    The Parties' Positions

Plaintiff asserts that the factual allegations she wishes to add to her pleading are properly alleged because they offer factual support to her claims of constitutionally inadequate care and deliberate indifference to Brown's serious medical needs. She reasons that in order to plausibly plead that Brown's constitutional rights were violated by Defendants' failure to protect him, she

must demonstrate that Defendants acted with deliberate indifference to Brown's substantial risk of harm. DE 19-3, page 12.

All Defendants oppose the motion to amend. <u>See</u> County Opp., DE 20-1; <u>see also</u> Armor Opp., DE 21-1. The County Defendants argue that the motion to amend should be denied because: (1) The PSAC contains causes of action that are futile; (2) the proposed allegations violate Fed. R. Civ. Pro. 12(f) because they are impertinent, redundant, and contain offensive language in paragraphs 47, 106, 124, 127, 129, 155, and 157 and (3) the motion is made in bad faith because Plaintiff knew of the facts sought to be added at the time of the filing of the FAC. Since such acts cannot therefore be newly discovered, alleging them at this points constituted bad faith sufficient to deny the motion to amend. DE 20-1, pages 4, 7, 9, 10.

Armor similarly argues that the motion to amend should be denied because: (1) the PSAC contains causes of action are futile; (2) the proposed allegations violate Rule 8 of the Federal Rules of Civil Procedure because they do nothing more than describe other lawsuits and rely upon allegations that are irrelevant to this case; (3) many of the proposed allegations (such as paragraphs 61, 62, and 63) are improperly speculative, impossible, unnecessary, and irrelevant, DE 21-1, page 7. Armor further argues that the proposed allegations are prejudicial to Armor because they can be leaked to the press, refer to the NYSCOC reports as though they are "gospel," and improperly rely on the Settlement, which cannot be relied on as evidence at trial. DE 21-1, page 9. As the County Defendants and Armor raise many of the same essential arguments, the Court will address them together.

IV.    <u>Disposition of the Motion</u>

As set forth above, the District Court has stayed briefing and any decision on Defendants' previously proposed motions to dismiss and/or strike factual allegations, pending the outcome of

this motion to amend. That decision reasonably recognizes that Defendants should move to dismiss with respect to an actually operative complaint, rather than one that might be replaced by amendment. Since Defendants have stated their intent to move pursuant to Rule 12(b)(6) to strike the ultimately operative complaint on the ground of futility (indeed, they have previously indicated their intention to so move, see DE 9, this Court will not address the Plaintiff's arguments of futility as they related to the plausibility of the overall allegations in the FAC or the PSAC. Instead, the Court will analyze the PSAC to determine whether amendment is proper. To the extent that such discussion touches upon the plausibility of Plaintiff's claims, Defendants will certainly have leave to fully brief such issues for decision on a Rule 12(b)(6) motion directed to the operative complaint, if they wish to so move before the District Court.

Taken together, Defendants argue first that amendment should be denied on the ground of bad faith because Plaintiff knew of the facts sought to be added at the time of the filing of the FAC, and cannot therefore argue that the PSAC is based on newly discovered facts. Defendants also argue that amendment must not be allowed because the facts sought to be added include scandalous, unsupported and prejudicial material as well as inadmissible hearsay that will not be allowed at trial. Such allegations are argued to violate Rules 12(f) and 8 of the Rules of Civil Procedure and to otherwise constitute improper and unnecessary pleadings. As demonstrated below, no argument raised requires denial of the motion.

A.    Allegations as to Plaintiff's Bad Faith Do Not Require Denial of the Motion

The similarity between the facts alleged in the FAC and those in the Gleeson complaint (which was filed before the complaint herein) are alleged in support of the argument that Plaintiff knew of such allegations at the time of the filing of the FAC, and the attempt to add those allegations at this time amounts to the bad faith required to deny a motion to amend. DE

20-1, pages 10-12. More specifically, the County argues that Plaintiff has misrepresented herself to the Court, and thereby acted in bad faith, by stating that she did not previously plead the facts sought to be added because of a lack of knowledge thereof. Id.

Although the Court finds the paragraphs highlighted in the Plaintiff's FAC and the Gleeson complaint to be strikingly similar, this Court cannot say with certainty that at the time she filed the FAC Plaintiff was aware of all facts asserted in the amendments she now seeks. Even assuming prior knowledge, such conduct does not, under the circumstances here, rise to the level of bad faith that is sufficient to deny a motion to amend.

"While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, '[a] finding that a party is seeking leave to amend solely to gain a tactical advantage ... supports a finding that such an amendment is made in bad faith.' " Franco v. Diaz, 51 F. Supp. 3d 235, 245 (E.D.N.Y. 2014) (quoting Youngbloods v. BMG Music, 2011 WL 43510, at *9 (S.D.N.Y. 2011)). Here, Defendants have made no showing that Plaintiff is seeking to gain a "tactical advantage" by moving to amend her complaint. Indeed, the timing of Plaintiff's motion, which is made by Plaintiff both pre-answer and prior to Defendants' service of their Rule 12 motions, supports an inference of good faith. See Franco, 51 F. Supp. 3d 235, 245 (stating that although it may be considered to be bad faith when a pleader brings a motion to amend based on facts she was already aware of in the summary judgment context, the Plaintiff is encouraged to do so in response to a motion to dismiss) (citations omitted)). For the foregoing reasons, the Court rejects the argument that Plaintiff's bad faith requires denial of the motion to amend.

      B.    <u>Defendants' Arguments as to Prejudice Do Not Require Denial of the Motion</u>

Defendants next argue that amendment should be denied because the PSAC is prejudicial because its proposed factual allegations: (1) may be leaked to the press; (2) refer to NYSCOC reports as though they are "gospel"; (3) include inflammatory words, and (4) refer to the DOJ settlement agreement, when it is clear such agreement is not to be used as evidence. See DE 20, page 9; see also DE 21-1, pages 5, 9, 10.

Defendants' arguments with regard to prejudice are unpersuasive. Importantly, the factual allegations proposed to be added by way of the PSAC are contained within the Gleeson complaint, which is already on the public docket in this District.  Other allegations appear on the docket of the State Court. Such allegations are also a matter of public record both here and in the jurisdictions referred to in the PSAC. While Defendants may not wish to have such allegations repeated again this the context of this lawsuit, such recitation is no more prejudicial to Defendants than the possible prejudice already provided by the public record. Under these circumstances Defendants cannot argue prejudice resulting from a possible "leak" to the press or the public.  It appears that ship has already sailed.

     C.     The Allegations Do Not Violate Rule 12(f)

The County Defendants argue that the proposed allegations violate Rule 12(f) of the FRCP because they are impertinent, redundant, and contain offensive language in paragraphs 47, 106, 124, 127, 129, 155, and 157. The Court disagrees.

Although language may be offensive, it may nevertheless be used to describe acts or events that relate to Plaintiff's claims.  Lynch, 278 F.R.D. at 64-65. Moreover, the Court notes that although the PSAC sets forth allegations that sound redundant when taken out of context, the Court finds that the majority of the paragraphs Defendant claims are redundant are in fact used to describe the circumstances surrounding two different deaths; paragraphs 125-132 describe the

circumstances surrounding Gleeson's death, and paragraphs 153-160 describe the circumstances surrounding Brown's death. The remaining two instances of duplicate paragraphs cited by the County simply not warrant a finding that the Plaintiff's motion to amend should be denied.

Although the proposed allegations contain inflammatory words, the argument that such statements should be struck under Rule 12(f) also lacks merit. The language Plaintiff seeks to add (as well as the similar language set forth in the FAC) is being used by Plaintiff to describe circumstances that she alleges occurred, or are occurring. The fact that such descriptive language makes Defendants uncomfortable does not require that it be struck. Lynch, 278 F.R.D. at 65 (E.D.N.Y. 2011). Indeed, "the fact that a complaint may be 'overly narrative or contain generalized statements or matters of opinion' is not in and of itself grounds to strike portions of the complaint absent a showing that the allegations 'are either irrelevant or unsupported.'" Id. at 65 (citing Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 829 (S.D.N.Y. 2008)).

The Court is aware that having pled such facts, Plaintiff will be put to her proof to show the veracity and admissibility thereof. While the facts alleged are likely within the scope of discovery, they may or may not prove admissible at trial. For the purposes of this motion, however, they do not violate Rule 12(f) so as to require denial of the motion to amend as futile.

D.    The Allegations Do Not Violate Rule 8

Armor argues that the motion to amend should be denied because the PSAC violates Rule 8 of the Federal Rules of Civil Procedure. Specifically, Armor characterizes the proposed allegations as "not allegations," but descriptions of other lawsuits that "rely upon purported facts that are irrelevant to this case," including allegations, such as paragraphs 61, 62, and 63, that are "speculative, impossible, unnecessary, and irrelevant," DE 21-1, page 7-9. To the extent that this argument relies on Rule 12(f), the Court rejects the argument for the reasons set forth above. To

the extent that Armor argues a violation of Rule 8 sufficient to support denial of a Rule 15

motion, the Court rejects any such argument.

There is no question but that Plaintiff's claims of deliberate indifference may not be

supported by boilerplate assertions. Instead, for such a claim to cross the line from possible to

plausible, the plaintiff must provide factual details about the alleged deficiencies, see Tieman,

2015 WL 1379652, at *14, and "facts that would allow the court to infer what [] policies,

practices, or customs contributed to or caused the deficiency." Simms v. City of New York, 2011

WL 4543051, at *3 (E.D.N.Y. 2011), aff'd by, Simms v. City of New York, 480 F. App'x 627

(2d Cir. 2012). In supporting a claim of deliberate indifference, a plaintiff may refer to other

lawsuits to demonstrate that the defendants are on notice of the possible deprivation of

constitutional rights inflicted by its police officers and/or employees. Tieman, 2015 WL

1379652, at *20. In making a determination as to deliberate indifference in the context of Rule

12, where plausibility is an issue, a plaintiff may support her claim by referring to lawsuits

alleging similar conduct. See id., at *20; see also Osterhoudt v. City of New York, 2012 WL

4481927, at *1 (E.D.N.Y. 2012). Indeed, a court may look to the number of similar cases, the

dates the similar cases occurred, and the nature of the lawsuits to support a deliberate

indifference claim. See Tieman, 2015 WL 1379652, at *20; see also Osterhoudt, 2012 WL

4481927, at *1. As deliberate indifference claims may be supported by showing a consistent

pattern, the number of lawsuits and dates of alleged violations is relevant, as is the defendants'

lack of response to the multiple complaints. Id.

In light of the foregoing requirement that Plaintiff allege facts in support of her deliberate

indifference claim, this Court will not rely on the pleading of particularized facts to deny a

motion to amend as violative of Rule 8. Plaintiff seeks to comply with Rule 8 by putting

20

Defendants on notice of her claims. Allowing amendment at this stage serves the purpose of Rule 8 by putting Defendants on particular notice of all facts alleged in support of the claims alleged.

  E.  <u>Plaintiff's Pleading May Refer to the NYSCOC Reports and the Settlement</u>

  Finally, the arguments that the NYSCOC reports are referred to as "gospel" and that the Settlement constitutes inadmissible evidence do not require denial of the motion to amend. As noted, Plaintiff is alleging deliberate indifference; thus, the Defendants knowledge of similar complaints and past conduct supports Plaintiff's allegations. <u>See</u> <u>Tieman</u>, 2015 WL 1379652, at *19-20. Moreover, the existence of a prior settlement agreement is not being used to establish Defendants' liability. Instead, it is referred to only show that Defendants knew of the risks that existed, but did not correct them, a fact that supports Plaintiff's claims. DE 22, page 5. As noted, the Settlement may or may not be admissible at trial. That is not the issue on a Rule 15 motion to amend, which certainly allows for a much broader scope of allegations. Again, it will be for the Plaintiff to prove the veracity and admissibility of her allegations.

V.  <u>Summary of Holding</u>

  The motion to amend is granted. Rule 15 is to be liberally applied to allow the pleading of facts in support of Plaintiff's claims. Plaintiff has not engaged in bad faith, and her proposed pleading violates neither Rule 12 nor Rule 8, and is not otherwise improper.

<u>CONCLUSION</u>

  For the foregoing reasons, Plaintiff's motion to amend, appearing as Docket Entry No. 19, is granted.

                SO ORDERED

Dated:  Central Islip, New York
    September 19, 2016

21

/s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge